STATE of Missouri, Respondent,

v.

James Dean BURNFIN, Appellant.

No. WD 40732.

Missouri Court of Appeals,
Western District.

June 6, 1989.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

■ James D. Burnfin was convicted by a jury of the offenses of second degree murder and armed criminal action and he was sentenced to terms of fifteen years and five years, to be served consecutively. On this appeal, Burnfin raises seven points of trial error, the most persuasive of which concern the excesses of the prosecuting attorney allowed by the court during closing argument and the evidence, erroneously admitted, upon which such arguments were predicated. We conclude Burnfin did not receive a fair trial as required by the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, §§ 10 and 18(a) of the Missouri Constitution. The conviction is therefore reversed.

The events leading to the death of the victim, Eddie Cecil Robinson, Jr., on August 30, 1987, were, in the main, undisputed. In the late hours of Saturday, August 29, Robinson, his cousin, Zachary Millentree, and others of their friends were at the courthouse square in Richmond drinking beer. Burnfin, his friend, Chris Trego, and two girls drove up to the square and parked, Trego driving, Burnfin on the passenger's side of the front seat and the girls in the back. The girls left the car to speak with their friends, who were also gathered at the square, and Burnfin, Trego and another companion who joined them remained in the car listening to music.

The Burnfin group was observed by Robinson and Millentree, and the latter was dispatched by Robinson to demand repayment from Burnfin of a $1.50 debt. Burnfin responded that he had no money and Millentree returned up the courthouse steps to report this to Robinson. At this point, Robinson went himself to the car and approaching the driver's side, demanded payment. Burnfin repeated his denial of funds and Robinson reached in the car window, across Trego, and struck Burnfin in the face with his hand. The evidence was in dispute as to whether this was a slap or a blow from Robinson's fist.

Robinson then walked around the front of the automobile to the passenger side and leaned through the open car window. Burnfin reached for a knife which he knew Trego kept under the car seat and struck out at Robinson. Two wounds were inflicted on Robinson, one to the throat and the other to the abdomen. According to subsequent medical evidence, the throat wound was almost instantly fatal because the esophagus and the right jugular vein were severed. The actual cause of death was massive blood loss. The abdominal wound was not the cause of any significant injury.

Burnfin immediately fled the scene but soon returned, admitted he was the person who had caused the injury to Robinson, and he was taken into custody. He gave a statement to the police generally conforming to the summary stated above, but contending that he struck out at Robinson because he was fearful of attack.[1] According to witness Millentree, Burnfin uttered racial slurs to Robinson and to Millentree. On the date of the homicide, Burnfin was age 17 and Robinson was 23. Robinson was a large individual who stood six feet four inches tall and weighed two hundred fifty pounds. Burnfin was of lesser height and weight.

The defense, submitted to the jury under appropriate instructions, was mental disease or defect and self-defense.

### I.

Appellant's first two points of error complain of the prosecutor's closing argument and the erroneous admission of evidence to which the prosecutor referred in his argument. The asserted grounds of error are that the prosecutor used evidence of an unrelated and uncharged crime to suggest that appellant was a law offender, that he used information developed by the physician who performed the mental examination to argue appellant's guilt and that he

---

1. Burnfin's account and that of witness Trego varied from the testimony of Millentree. Burnfin testified that he stabbed Robinson only once while inside the car. He said the fatal wound was inflicted only after he had left the car, pursued by Robinson. Trego had no recollection of Millentree coming to the car.

conducted a personal attack on defense counsel. We consider these assertions in sequence.

### A.

During the state's opening remarks to the jury, the prosecutor stated that the evidence would show Burnfin and his companions were at the courthouse square smoking dope. The defense objected, contending that reference to use of marijuana impermissibly injected evidence of an unrelated crime into the case. The court summarily overruled the objection. During the later questioning of state's witness Millentree, he was permitted to testify, over objections by the defense, that he observed Burnfin and others smoking marijuana as they were seated in Trego's automobile. In closing argument, the prosecutor reminded the jury of Millentree's testimony that Burnfin had been smoking dope and, although given the opportunity to do so, Burnfin had not denied it. He also pointed out that the post mortem examination of Robinson had showed no drugs present in his system. Objections to this line of argument were overruled.

A criminal defendant has the right to be tried only for the crime with which he is charged. Admission of evidence of unrelated crimes is prejudicial because it may result in a conviction founded upon crimes of which the defendant was not accused. *State v. Trimble,* 638 S.W.2d 726, 732 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). There are situations in which evidence of other crimes may be admitted in support of such issues as motive, intent, the absence of mistake or accident, common scheme or plan or the identity of the person charged. *State v. Collins,* 669 S.W.2d 933, 936 (Mo. banc 1984). The test for admission of evidence of other crimes is whether the evidence logically tends to prove a material fact in issue. *State v. Reed,* 447 S.W.2d 533, 534 (Mo.1969).

In *State v. Owen,* 753 S.W.2d 114 (Mo. App.1988), the defendant was charged with sale of marijuana. The court reversed the conviction because the state had introduced evidence that twelve days earlier, the defendant had arranged for an undercover officer to make a different purchase of marijuana. That evidence had "little" probative value and was so highly prejudicial that it should not have been received. The same rationale was applied to reverse a conviction for the unlawful sale of marijuana in the earlier case of *State v. Reed, supra.* In *State v. Kesler,* 745 S.W.2d 846 (Mo.App.1988), the defendant was charged with driving while intoxicated. The conviction was reversed because the trial court failed to exclude evidence that the defendant had previously been convicted of driving while intoxicated.

In the present case, the fact that Burnfin had been smoking marijuana the night in question had no bearing whatever on any of the facts in issue and had no tendency to prove Burnfin guilty of homicide. The sole purpose of the prosecutor for injecting this irrelevant fact in the case, as demonstrated by the content of his closing argument, was to portray Burnfin as a dope user and to thereby prejudice his cause before the jury. It was error to have admitted the evidence over objection and to have permitted the prosecutor to argue the criminality of marijuana use as a basis to convict Burnfin of the homicide.

### B.

The defense had called Dr. Nicholas Bartulica to testify in support of Burnfin's defense of diminished capacity. Bartulica had performed a statutory mental examination of Burnfin in September, 1987, the month following the death of Robinson. On cross-examination, the prosecutor questioned Bartulica about details of Burnfin's medical history including prior admissions some years before to Western Missouri Mental Health Center and Woodson Children's Center. The defense objected that the questioning was being pursued for an improper purpose and not to test the diagnosis of mental disease or defect. The trial court overruled the objection.

In closing argument and using the information from Burnfin's medical case history as related by Dr. Bartulica on cross-exami-

nation, the prosecutor was permitted, over objection by the defense, to tell the jury. that in determining Burnfin's guilt of the homicide, it should consider Burnfin's aggressive acts in the past, his experience with knives and his propensity to commit assaults. Among the prosecutor's remarks were: "Mr. Burnfin has got plenty of experience with knives; he had a 14 inch German knife, that he took to school with him; he stole a knife from the cafeteria of St. Joe Mental Hospital, sharpened it and kept it in his rooms; [he] played with nitroglycerin bombs; [he] makes homemade bombs, carries weapons to school, threatens to kill his mother and sister,[2] takes a pitchfork after his stepfather."

Section 552.020.12, RSMo 1986, provides that no statement made by the accused in the course of any examination made upon the subject of the accused's mental capacity shall be admitted in evidence on the issue of guilt in any criminal proceeding. MAI–CR3d 306.04, read to the jury in this case, includes the caution that statements made to and information received by the doctor during the inquiry into the mental condition of the defendant should not be considered as evidence that the defendant did or did not commit the acts charged.

■ It is improper for counsel to argue questions of law not within the issues or inconsistent with the instructions of the court or to present false issues. *State v. Holzwarth,* 520 S.W.2d 17, 22 (Mo. banc 1975). Efforts to inflame the passions and prejudices of the jury by reference to facts outside the record are condemned by ABA standards and constitute unprofessional conduct. The prosecutor may prosecute with vigor and strike blows but he is not at liberty to strike foul ones. *State v. Long,* 684 S.W.2d 361, 365 (Mo.App.1984).

In the present case, it would have been legitimate for the prosecutor to have attempted to argue that Dr. Bartulica's opinion as to Burnfin's diminished capacity was ill-founded, considering prior medical history of Burnfin's earlier treatment, but he did not do so. Indeed, that history tended

to confirm the diagnosis. Instead, the prosecutor used Burnfin's prior acts, gleaned only from the medical records and available only because Burnfin had been examined for competency, to suggest to the jury that Burnfin was a violent person apt to have been the aggressor in the confrontation with Robinson. Not only was the argument inflammatory and an ill-disguised appeal to the jury's prejudice, it was in direct violation of the court's instruction that the jury not consider evidence from Burnfin's medical record as proof that Burnfin was guilty of the charge against him. That instruction placed the entire content of Dr. Bartulica's testimony on cross-examination outside the record so far as the issue of guilt was concerned.

The trial court erred when it permitted the prosecutor to argue that Burnfin's medical history of aggressive behavior could be considered in arriving at a decision on the criminal charges in this case.

### C.

■ In his closing argument, the prosecutor also conducted a personal attack on defense counsel. He argued that the defense had spent two days trying to hide the truth from the jury, that defense counsel had "trashed" witness Millentree because he could not read and that the defense had coached its witness. No mention of these errors was made in the motion for new trial and they are considered as plain error, Rule 30.20.

Ordinarily, a point of error not mentioned in the new trial motion is not preserved for appellate review. *State v. Tammons,* 522 S.W.2d 648, 651 (Mo.App.1975). In some instances, however, the making of improper statements injects poison and prejudice into the case which may not be neutralized and it is therefore appropriate to grant relief even though the error may not have been preserved for appellate review. *State v. Thomas,* 535 S.W.2d 138, 141 (Mo.App.1976). This is such a case, the effect of the multiple errors in the prosecu-

---

**2.** The state acknowledges there was no evidence in the case, even from prior medical reports, that Burnfin had ever threatened to kill his mother or sister.

tor's argument being cumulative and egregiously prejudicial. *Faught v. Washam*, 329 S.W.2d 588, 604 (Mo.1959). The excesses of the prosecutor in presenting his closing argument and the failure by the trial judge to sustain defense objections to that argument require reversal of the conviction.

## II.

In view of the conclusion that the prosecutor's closing argument infused a degree of prejudice in this case which can be remedied only by a new trial, we comment only briefly on two other points of error raised by appellant.

### A.

■ During trial, the prosecutor exhibited to its witness James R. Park, a police officer, a number of documents including a report of Burnfin's arrest. The report referred to Burnfin as the suspect, Robinson as the victim and stated that Burnfin had admitted committing the offense. The report also showed Burnfin had previously been arrested for "Theft under $150.00." The report was never offered or received in evidence. During jury deliberations, the court sent the report to the jury room with other exhibits. Objection by the defense that the jury should not have the report was overruled by the court. Quite apparently, it was error for the court to give the jury during deliberations an exhibit which was not in evidence. Even assuming that to have been an oversight, however, the prejudice to the defendant lay also in the content of the report. Had it been offered, the report was not admissible because of the hearsay it contained, the information about a prior arrest and the impermissible bolstering of the in-court testimony by the officer who prepared the report. The trial court erred to appellant's prejudice by allowing the jury to have the arrest report.

### B.

■ Next, appellant contends it was error for the court to have overruled the defense motion to strike the testimony of prosecution witness Dr. Kwei Lee Su concerning the alcohol content of Robinson's blood. According to Su, the extent of alcohol in the blood sample she examined indicated that the person from whom the blood was taken would have exhibited no signs of intoxication. This evidence was used by the prosecutor to argue that Robinson could not have been belligerent and the aggressor in the confrontation with Burnfin because he was not drunk even though witnesses testified that Robinson was at the courthouse square drinking beer. The line of argument was particularly significant because coupled with the depiction of Burnfin as having been smoking marijuana and inferentially under the influence of that substance.

The objection to the testimony by Dr. Su was based on the absence of any evidence showing that the blood sample tested was taken from Robinson. This claim was well founded and accurate. After Robinson was killed, an autopsy was performed by Dr. James Bridgens, witnessed by the Ray County Coroner, Dale Snow. Neither Snow nor Bridgens testified that they removed any blood from the body. Officer Cevie Due testified that he sent blood to the crime laboratory for testing but he did not say whose blood it was. A chemist, Robert Booth, testified that he examined a blood sample taken from Robinson, but he did not say from whom or how he received the sample.

The prevailing law, announced in numerous cases, is that reasonable assurance must be provided to show that the exhibit sought to be introduced is the same and in like condition as when received. While hand-to-hand custody of the exhibit need not be accounted for, the evidence must provide reasonable assurance against alteration or substitution. *State v. Scott*, 647 S.W.2d 601, 607 (Mo.App.1983).

In the present case, not only was there no evidence offered to show how or when the blood sample reached the laboratory for examination by Dr. Su, there was no proof either that blood was drawn from Robinson's body or that the sample tested was Robinson's blood. The court erred when it failed to strike Dr. Su's testimony

and when it failed to limit the prosecutor's argument based on the demonstration of Robinson's purported sobriety.

The trial transcript in this case reveals a number of other errors to which appellant refers in his appeal and a climate of hostility toward appellant and his attorney. Such circumstances are inimical to a system of justice and inevitably lead to claims of denial of constitutional rights to due process. It is assumed that on retrial, these errors will be avoided and that the prosecution will recognize its obligation, not merely to win a case, but to see that justice is done, that guilt shall not escape nor innocence suffer. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

The judgment is reversed and the case is remanded for a new trial.

All concur.