STATE of Missouri, Respondent,

v.

Kenneth H. THOMPSON, Appellant.

No. 80442.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1999.

Melinda K. Pendergraph, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser. Asst. Atty. Gen., Jefferson City, for respondent.

JOHN C. HOLSTEIN, Judge.

Defendant Kenneth Thompson was convicted of two counts of murder in the first degree, in violation of sec. 565.020, RSMo 1994. He was sentenced to death. This Court has jurisdiction. *Mo. Const. art. V, sec. 3.* The judgment of guilt is affirmed. The death sentence is reversed, and the cause is remanded for a new sentencing hearing.

■ Defendant does not contest the sufficiency of the evidence. The facts are reviewed in a light most favorable to the verdict. *State v. Kreutzer,* 928 S.W.2d 854, 859 (Mo. banc 1996), *cert. denied,* 519 U.S. 1083,

117 S.Ct. 752, 136 L.Ed.2d 689 (1997). In July 1996, defendant and his wife, Tracie Thompson, were experiencing marital problems. On August 1, 1996, Tracie's stepfather, Clarence Menning, asked defendant to leave his home. Defendant had been living in the Menning home with his wife and children after a fire had damaged their house.

The next weekend, Tracie arranged for the children to stay with defendant while she traveled out of town. Defendant picked up the children on Friday, August 2 and returned them on Sunday, August 4. At that time, defendant argued with Tracie about her desire for a divorce and her relationship with another man. Defendant eventually left for his mother's home. Tracie returned to the Menning home with her children.

As the evening of August 4 became the morning of August 5, defendant left his mother's home. Defendant drove to the Menning home and remained in his parked van across the road for a while. Around 2:30 in the morning, defendant cut the telephone wires running to the Menning home and entered the home with a gun and some other tools, including a splitting maul handle.

Inside, defendant checked on his wife and children and found them asleep. He wished to talk with his wife, but did not want to be interrupted by her mother and stepfather. Defendant considered tying the Mennings up with duct tape, but decided against doing so because Mr. Menning was much larger than he was. Defendant struck Mr. Menning in the head at least four times with the maul handle. Mr. Menning died "as a result of multiple blunt impact injuries to the brain." Defendant's attack left Mr. Menning's brain visible. Defendant then struck Mrs. Menning in the head three times. Mrs. Menning died after suffering a fractured skull and brain injuries as a result of defendant's attack. Mrs. Menning also suffered a bruise on her left hand and scrapes and tears on her index finger, suggesting that she attempted to defend herself.

After defendant finished beating the Mennings, he moved to his wife's bedroom. Tracie awoke to find defendant undressed and standing over her, holding a gun. Defendant then jumped onto the bed and straddled Tracie. He ripped off her underwear, pinned her hand against the headboard, and forced her legs apart. Defendant then raped Tracie, despite her resistance and cries for help.

After the rape, defendant forced his wife out of the house and into his van. After Tracie was in the van, defendant pulled up to the Menning home and collected the children, whom he also placed in the van. At one point, defendant bound his wife's arms and legs with duct tape to keep her from resisting.

As they drove away, Tracie asked defendant to return to the Menning home so that she could check on her parents. Defendant told his wife that he had killed them. Eventually, after Tracie promised not to call the police, defendant drove her and the children to a friend's home at approximately 5:30 that morning. Defendant gave Tracie some clothes he had placed in his van. Tracie told defendant to leave, and he did. Tracie and her friend returned to the Menning home later that morning and discovered the Mennings' bodies.

Meanwhile, defendant had traveled to Sedalia, where he abandoned his van and borrowed a car from his aunt. Then, defendant cashed a check, purchased a suitcase and continued west to Warrensburg where he hoped to catch the train to Kansas City. In route to Warrensburg, defendant took some money from newspaper vending machines using Mr. Menning's keys.

At the Warrensburg train station, defendant telephoned his mother's house. He spoke to family members and the Morgan County sheriff. Eventually, defendant agreed to surrender to the sheriff. He told the sheriff he was in Warrensburg and would stay there until the sheriff arrived. The sheriff traveled to Warrensburg. He met defendant there, arrested him, and informed him of his *Miranda* rights. The sheriff then called the Johnson County sheriff's department and placed the defendant into its custody. Defendant consented to the Johnson County sheriff's search of his aunt's car and his van. Sergeant Ripley of the Missouri Highway Patrol interviewed defendant. La-

ter, the defendant made a videotaped confession.

In July 1997, defendant escaped from the Benton County jail, where he was awaiting trial. He was caught the same night after fleeing to Jackson County.

At trial, appellant asserted the defense of diminished capacity due to a mental disease or defect. Dr. Richard Smith testified that defendant experienced a "psychotic episode" on the night of the killing that rendered him unable to deliberate. Dr. Smith opined that the killings were "an outburst related to his illness over which [defendant] at that time had no control."

The jury returned guilty verdicts on both counts of murder in the first degree.

During the penalty phase, the state offered the testimony of defendant's ex-wife, Linda Carver. She testified about defendant's abusive, threatening conduct during their marriage. Carver also recalled an occasion on which defendant shot someone he had seen "messing with [his] car." The state also offered testimony of Deputy Sheriff Darrell Patterson, who stated that defendant told him he would try to escape from jail again if given the chance. In addition, the state elicited victim impact testimony from two of the Mennings' children. At the close of its penalty phase case, the state admitted records of defendant's prior convictions.

Defendant presented more testimony from Dr. Smith. Defendant also elicited testimony from Sheriff Roger Brink as to defendant's good behavior in jail. Defendant called his friend, Melvin Parks, and his mother, Mary Lou Sanders. They testified about their personal relationships with defendant.

At the close of the evidence, instructions, and arguments by counsel, the jury recommended the death penalty on both counts, finding two statutory aggravating circumstances existed with respect to each murder. The court entered a sentence of death on each count. Defendant appeals, raising twelve points of error.[1]

## GUILT PHASE

### Disclosure Issues – Point II

Defendant claims that the state repeatedly violated Rule 25.03 and that the trial court abused its discretion by overruling defendant's (a) motion to compel discovery, (b) motion for sanctions, (c) motion for a continuance, and (d) by admitting certain evidence over defendant's objections. Defendant claims that these abuses of discretion violated his constitutional rights of due process, confrontation and compulsory process.

Notwithstanding the state's disclosure of over two hundred pages of documents and dozens of responses to other discovery requests, defendant claims the following evidence relating to his conviction was disclosed too late or not at all, in violation of Rule 25.03: the testimony of Tracie Thompson that defendant had moved a bag of clothes from her car; the testimony of Darlene Anderson about how defendant behaved toward his wife; "physical evidence, written statements and other evidence" in the possession of the Benton County sheriff's department; defendant's prior convictions, defendant's jail records and defendant's medical records; and notes of expert witnesses.

#### A.

Although defendant complains of the trial court's denial of his motion to compel discovery, defendant fails to identify any specific ruling of the trial court that he now appeals. Defendant claims that the state disclosed evidence late or not at all, but does not identify any instance where the trial court

1. The defendant's brief is defective in several respects. Most notably, defendant's numerous assertions of error are lumped into twelve groups, with each of the groups being characterized as a point relied on. Into these twelve "points," defendant loads not fewer than forty allegations of trial court error. Points containing multifarious allegations of error violate Rule 30.06. *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978) (applying former Rule 84.04, the civil rules counterpart of Rule 30.06). All this has required the Court to parse the points and dissect the argument to discern the gist of the several claims. A point relied on is not the place for rambling, makeweight argument. Defendant is entitled to no more than plain error review of all claims except those asserted in points III, IV, XI and XII.

denied defendant's motion to compel disclosure. This claim is denied.

## B.

■ Defendant correctly points out that the trial court did deny his motions for sanctions and contends that these denials were an abuse of discretion. Even assuming that defendant's accusations of discovery violations are true, the decision to impose a sanction for a party's noncompliance with the discovery requests lies within the sound discretion of the trial court. *State v. Kinder*, 942 S.W.2d 313, 338 (Mo. banc 1996). "Failure to impose sanctions for a discovery violation will be considered an abuse of discretion if the violation resulted in fundamental unfairness or substantively altered the outcome of the case." *Id.* Fundamental unfairness occurs when the state's failure to disclose results in defendant's "genuine surprise" and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence. *State v. Johnston*, 957 S.W.2d 734, 750 (Mo. banc 1997). Defendant claims that late and nondisclosures prejudiced his ability to investigate, prepare for trial, confront witnesses and rebut the evidence, and injected arbitrariness in the proceeding. Before the trial court and on appeal, defendant does not specify how further investigation or preparation would have benefited his defense. Defendant's bare assertions of prejudice are not sufficient to establish fundamental unfairness nor do they demonstrate how the outcome of the case was substantively altered. *State v. Brown*, 902 S.W.2d 278, 290 (Mo. banc 1995). The trial court did not abuse its discretion in denying defendant's motion for sanctions.

## C.

■ Defendant claims that the trial court should have granted a continuance because of the alleged violations of Rule 25.03. The grant or denial of a motion for continuance is a matter of discretion for the court. *Brown*, 902 S.W.2d at 289. A "very strong showing" is required to prove abuse of that discretion, and the party requesting the continuance bears the burden of showing prejudice. *Kinder*, 942 S.W.2d at 322. "Difficul-

ties counsel might encounter in preparing to deal with evidence do not require the judge to grant a continuance." *Brown*, 902 S.W.2d at 289.

In his brief, defendant directs this Court to two motions for a continuance. The first occurred approximately six weeks prior to trial during a pretrial hearing regarding several other motions. The court informed defendant at that time that if he wanted a continuance, defendant needed to file the reasons that warranted the continuance. However, defense counsel apparently failed to follow up on this request. Approximately two weeks before trial, defendant again requested a continuance alleging that he needed more time to investigate additional witnesses, defendant's prior convictions, defendant's jail records, and the medical records of Tracie Thompson. The request was denied because defendant had not sufficiently articulated why he needed more time. However, the judge left open the possibility of a continuance closer to the trial date if defendant could show that further investigation was warranted. On appeal, defendant again claims he needed more time, but again does not articulate what evidence would have developed had he been provided more time. Thus, defendant fails to make the "strong showing" required by *Kinder* that he was prejudiced. The trial court did not abuse its discretion in denying defendant's motions for a continuance.

## D.

■ Defendant also claims that the trial court abused its discretion by overruling defendant's objections to the testimony of Tracie Thompson that defendant moved a bag of clothes from her car. Defendant claims the state failed to disclose the nature of this testimony to him before trial. Under Rule 25.03(1), the state must disclose the "written or recorded statements [of state's witnesses], and existing memoranda, reporting or summarizing part or all of their oral statements."

■ With respect to Tracie Thompson, defendant makes no claim that the state possessed any statement or summary containing the objected to testimony. Apparently, the state had disclosed statements previously

made by Tracie. In addition, Tracie was deposed by the defendant. The prosecutor explained that "every single detail is not in [Tracie's] statement." When a witness' trial testimony includes information in addition to that contained in previous statements which had been provided to the defense, this is a proper subject for impeachment but does not constitute prosecutorial violation of Rule 25.03(1). *See Mitchell v. Wyrick,* 536 F.Supp. 395, 401 (E.D.Mo.1982) (interpreting Rule 25.32(1979), the predecessor of Rule 25.03). There was no error in overruling the objection to the testimony regarding the bag of clothes.

### E.

According to defendant, the state also failed to reveal that Darlene Anderson would testify about defendant's possessive behavior toward Tracie. First, defendant's only complaint at trial was that he did not think Ms. Anderson's disclosed statements discussed defendant's relationship with his wife. He was not sure they did not, and neither is this Court. The record on appeal is silent regarding the substance of Ms. Anderson's disclosed statements. Moreover, there was ample evidence from other sources, including the accused himself, that defendant acted in a possessive way toward his wife. For these reasons, the trial court did not err in overruling defendant's objection.

### Expert Witness Issues – Points IV & V

### A.

Defendant maintains the trial court erred in compelling the pre-trial disclosure of Dr. Smith's report and notes under Rule 25.06. He argues this ruling violated Rule 25.05(A), which provides that "those portions of [any reports or statements of experts] containing statements made by the defendant shall not be disclosed." Rule 25.06 provides for disclosure under court order. Specifically, Rule 25.06(A) requires disclosure of material and information "not covered in Rule 25.05" upon a written motion if the court finds reasonable grounds for requiring disclosure.

Regardless of whether these rules of disclosure should be read to preclude pretrial disclosure of defendant's statements in the psychiatrist's report or notes, as Thompson contends, once a defendant places his mental condition at issue, he waives any claim that information or testimony from experts violates his privilege against self-incrimination. *State v. Copeland,* 928 S.W.2d 828, 839 (Mo. banc 1996). At that point our rules of discovery and disclosure give way to the law of evidence in statutes, specifically sec. 552.030.5. Under that section, statements made to a psychiatric examiner "shall be admissible…only on the issue of his mental condition," and defendant is entitled to a limiting instruction. *Id.*No limiting instruction was requested or given. This claim is without merit.

### B.

Defendant's next point relates to the preceding one. He claims the trial court erred and abused its discretion by permitting the prosecutor to cross-examine Dr. Smith and argue defendant's guilt to the jury using statements he made to Dr. Smith. Defendant relies primarily upon *State v. Burnfin,* wherein the court of appeals reversed a conviction based upon the improper evidence and argument relating to prior bad acts wholly unrelated to the charged offense that had been gleaned from an expert's report. 771 S.W.2d 908, 912 (Mo.App.1989). In *Burnfin,* the defendant raised both self-defense and the defense of diminished capacity. In support of the diminished capacity defense, he called Dr. Nicholas Bartulica. The court of appeals held that the trial court erred in permitting the prosecutor to argue evidence of the defendant's prior bad acts. The prosecutor used that evidence, available only from medical records made in the course of Dr. Bartulica's mental examination, to suggest that the defendant was "a violent person apt to have been the aggressor." *Id. Burnfin* also noted that the prosecution is allowed to address the facts forming the basis of an expert's report or opinion, including bad acts in an attempt to show the expert's opinion was ill-founded. The dispositive issue, then, is whether the trial court

abused its discretion in assessing the prosecutor's purpose with respect to the evidence.

The crux of Dr. Smith's testimony was that during the killings, defendant was experiencing a "psychotic episode" that rendered him unable to "formulate clearly [his] own thoughts" or "have conscious or willful control over [his] behavior." The defendant then argued to the jury, based on this testimony and other evidence, that he was not guilty of first-degree murder because he lacked the requisite mental state due to this episode. It was important for the state's case to discredit Dr. Smith's opinion. To that end, the state pointed out evidence known or that should have been known to Dr. Smith in formulating his opinion. Because the psychiatrist's notes or report are not part of the record on appeal, it is not possible for us to determine precisely which of defendant's prior statements, used in cross-examination, were from Dr. Smith's notes or report, and which were statements that had been made to others. It appears from the transcript that a few such statements were used. This evidence suggested defendant had indeed planned his actions and was not delusional while he killed the Mennings. In particular, the state pointed out threats defendant made toward his wife and statements he made to third parties suggesting he felt entitled to act violently toward his wife. The state also cross-examined Dr. Smith regarding the defendant's relatively high IQ to suggest defendant's ability to plan and deliberate. All of the foregoing evidence, with varying degrees of persuasiveness, indicates that Dr. Smith's evaluation of defendant's mental state at the time of the killings was incorrect. A substantial inquiry into the factual basis of an expert opinion is a proper object of cross-examination and, because of this strategic consideration, the trial court did not abuse discretion in allowing the state to inquire of Dr. Smith as it did. *State ex rel. State Hwy. Com'n v. Koziatek,* 639 S.W.2d 86, 89 (Mo.App.1982); *Powell v. Norman Lines, Inc.,* 674 S.W.2d 191, 196 (Mo. App.1984). Unlike *Burnfin,* the cross-examination and argument related exclusively to the defendant's conduct and mental state in committing the charged offenses. No prior unrelated bad acts that were otherwise not before the jury were related by Dr. Smith. Where defendant's statements in the psychiatrist's notes or report were used, Thompson was entitled to a limiting instruction under sec. 552.030.5. As we have noted in section A, no limiting instruction was requested or given.

C.

■ Defendant also objects to the reference to a prior conviction during the cross-examination of Dr. Smith. Specifically, the state asked, "did [defendant] indicate to you that he, in fact, had pled guilty to...." At this point, defendant objected and requested a mistrial. The trial court sustained the objection. However, the trial judge did not grant the mistrial but instead admonished the jury to disregard the improper reference. No further objection was made that the admonition was inadequate. The trial court will not be required to declare a mistrial absent extraordinary circumstances. *State v. Neff,* 978 S.W.2d 341, 346 (Mo. banc 1998). Generally, sustaining a defendant's objection and admonishing the jury to disregard an improper reference suffices to cure any error of this sort. *Id.* This was not an extraordinarily prejudicial statement. Indeed, the crime to which defendant allegedly pled was never mentioned. The trial court's denial of a mistrial was not an abuse of discretion.

D.

■ Defendant also takes issue with the state's use of information taken from Dr. Smith's notes during its closing argument. He points out four objectionable statements. At trial, he lodged no objection to three of these statements. Only one of the three included a comment on what Dr. Smith was told by defendant, specifically, defendant's statement that if another man "slept with [defendant's wife] twice, he should be able to do it at least once." Therefore, defendant must show plain error in the trial court's failure to *sua sponte* interrupt closing argument. Relief should rarely be granted on assertions of plain error as to closing argument because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference

with summation and a corresponding increase of error by such intervention. *State v. Silvey*, 894 S.W.2d 662, 670 (Mo. banc 1995) (quoting *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988)). Under the circumstances of the closing arguments in this case, plain error is not established.

▆ The fourth statement was a threat made by defendant against Tracie, which Dr. Smith reviewed in the course of his evaluation. When the prosecutor referred to that statement during closing argument, defendant objected that the statement was based on facts not in evidence. The trial court instructed the jury to recall the evidence. This admonition has been held adequate to cure any confusion caused by a prosecutor's erroneous statement. *State v. Coleman*, 441 S.W.2d 46, 54 (Mo.1969); *State v. Bragg*, 867 S.W.2d 284, 292 (Mo.App.1993); *State v. Sykes*, 571 S.W.2d 456, 459 (Mo.App.1978). In any event, the threat referred to by the prosecutor had been admitted into evidence without objection or a request for a limiting instruction by the defendant.[2]

### Point VI

Point six contains three separate allegations of error.

#### A.

▆ First, defendant argues the trial court erred in denying his motion to exclude defendant's testimony about being on probation at the time of the offenses. In his confession, defendant states that he intentionally avoided driving through Stover, Missouri, on the way to the Menning home because he knew the local police there check license plates as a matter of course. On the night of the killings, defendant was in violation of his probation due to his arrest that spring. Presumably, defendant wished to avoid provoking scrutiny from the local police.

Evidence of other crimes is admissible if it tends to establish, among other things, intent. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Defendant's statement about avoiding Stover suggests he was reflective immediately prior to the killings. It is probative of the central issue in controversy and, therefore, was properly admitted. *See State v. Morrow*, 968 S.W.2d 100, 107–08 (Mo. banc 1998). Defendant makes much of his subsequent statement that his avoidance of Stover "wasn't really intentional, because it would have been out of my way anyway." This information may well affect the weight the jury assigned to the preceding statement, but not its admissibility. The import of defendant's statement was that he was able to consider things like the most surreptitious route to the Mennings' residence, not whether all of his considerations were ultimately necessary. No error occurred in permitting evidence as to defendant's motive in avoiding driving through Stover.

#### B.

▆ Second, defendant objects to two instances of opinion testimony given by Sheriff Leonard Earnest. In the first instance, the prosecutor asked the sheriff if defendant "claimed a memory loss" after surrendering to him at Warrensburg. The trial court properly overruled defendant's objection to this question because it did not ask for an opinion. Later, the prosecutor asked the sheriff, "is it your opinion that [defendant] feigned memory loss?" The trial court properly sustained defendant's objection to this question because it asked the sheriff to evaluate defendant's claim. Defendant requested no further relief. The trial court did not err in failing *sua sponte* to declare a mistrial.

---

2. As noted, defendant could have requested an instruction limiting the jury's consideration of Dr. Smith's testimony to the mental illness issue. *Sec. 552.030.5, RSMo 1994.* However, an accused may waive that right by failing to request the instruction. *State v. Scott*, 841 S.W.2d 787, 790 (Mo.App.1992). Because the instruction diminishes the jury's ability to consider out-of-court statements made by defendant favorable to him, defendant may have had good reason not to request such instruction. For example, Dr. Smith related defendant's statement that he did not remember striking the Mennings. He also recounted remarks defendant made to him about the deep emotional stress he was feeling at the time of the killings. These are important statements for defendant's case because they show that even if he was not mentally ill, his mental state fell short of the "cool reflection" required for a first-degree murder conviction.

*Kreutzer,* 928 S.W.2d 854, 873 (Mo. banc 1996).

### C.

▮ Third, defendant objects to evidence of ammunition he possessed at the time of his arrest because there was no evidence a gun was fired throughout the commission of the offenses. Essentially, defendant claims this evidence was irrelevant. Missouri Highway Patrol Officer David Schwalm testified that he found shells for a .22 caliber weapon and a .357 magnum in defendant's duffel bag at the time of his arrest. The .357 magnum shells were relevant to show that defendant had the means to fire the .357 magnum during the crime and his subsequent flight from the scene. *State v. Rodden,* 728 S.W.2d 212, 219 (Mo. banc 1987). Therefore, Officer Schwalm's testimony about those shells and their subsequent admission was not erroneous. As for the .22 caliber shells, they were not admitted into evidence. Officer Schwalm merely mentioned that he collected them along with the .357 shells. This brief testimony was permissible to give the jury a more complete understanding of the post-arrest investigation. *State v. Skillicorn,* 944 S.W.2d 877, 886 (Mo. banc 1997) (citing *State v. Flenoid,* 838 S.W.2d 462, 467 (Mo.App.1992)). No error occurred in permitting a reference to the .22 caliber ammunition.

### Escape Issues – Point VII

#### A.

▮ Defendant next claims the trial court erred in admitting evidence of his escape from the Benton County jail while he awaited trial in this case. Proof of escape from jail is generally admissible to show a consciousness of guilt. *State v. Sprous,* 639 S.W.2d 576, 578 (Mo.1982). Defendant claims that, in the present case, "nothing suggested [defendant] escaped because he was guilty." This Court rejected such an argument in *State v. Hughes,* where it noted "whether [a defendant's] escape pending trial was motivated by consciousness of guilt or some other consideration [is] a question of fact properly left for the jury." 596 S.W.2d 723, 730 (Mo. banc 1980). The Court there

expressly rejected the contention that the inference to be drawn from evidence of the defendant's escape was sufficiently ambiguous to merit exclusion of the evidence. *Id.* The claim is again rejected.

#### B.

▮ In connection with the escape, defendant asserts the trial court erred in denying his motion to quash the venire panel because of the prosecutor's remarks to one of the venirepersons. The prosecution inquired into whether members of the venire had heard defendant's name in connection with the Benton County jail escape and whether that information had caused anyone to form an opinion of defendant's guilt. Thereafter, the following colloquy took place:

> Prosecutor: And juror number 15. Because of what you've heard, have you formed an opinion about the defendant's guilt in this matter?
>
> Juror [15]: Yes, I have.
>
> Prosecutor: Yes, you have. You don't think you could lay that opinion aside?
>
> Juror [15]: I don't think so.
>
> Prosecutor: You would think so?
>
> Juror [15]: I don't think so.
>
> Prosecutor: So you have already presumed essentially the defendant guilty at this point. Is that what you're telling us?
>
> Juror [15]: Yes.

Defendant timely objected to the prosecutor's announcement of juror 15's opinion to the entire venire and moved to strike the entire panel. The trial court denied his motion but admonished the prosecutor that the question was merely whether a venireperson had an opinion of defendant's guilt, not what the opinion was.

▮ To demonstrate the necessity of striking the entire panel because of improper comments, defendant must demonstrate that the comments were "so inflammatory and prejudicial that it can be said that a right to a fair trial has been infringed." *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). A trial court enjoys broad discretion in determining whether a panel should be dismissed. *Id.* Its ruling on such a motion will not be disturbed absent a clear abuse. *Id.*

Here, the trial court's decision to deny defendant's motion appears to be correct. First, although the prosecutor improperly gave her assessment of the substance of the venireperson's opinion of defendant's guilt, that assessment was a relatively obvious one. The inferences to be drawn from escape with respect to the escapee's guilt, if any, are generally negative. *See supra, Hughes* and related discussion. Further, defendant had already made a similar statement to the panel earlier in voir dire when he asked a potential juror "[S]o if there's evidence of an escape, are you – is it then you're no longer going to presume him innocent because of that?" The prosecutor's remarks do not appear to be so inflammatory or prejudicial as to merit reversal of the trial court's discretionary ruling.

### Voir Dire Issues – Points VIII & IX
#### A.

■ Defendant next argues the trial court erred in its administration of voir dire. First, defendant objects to the trial court's pre-trial order on the subject. In particular, the trial court conducted voir dire on the issue of pre-trial publicity. It asked the panel (1) whether anyone had heard, read or seen anything about the case prior to trial and (2) based on that information, whether they had formed an opinion as to defendant's guilt, and (3) whether they could set their opinion aside. The trial court then allowed defendant to question those venirepersons individually who had indeed heard about the case. In his "motion for individual voir dire of prospective jurors," defendant asked that he be able to individually question venirepersons on how pre-trial publicity has affected their views of him and the case against him. Defendant was given that opportunity. Defendant's contention that asking the aforementioned threshold question eliminates "any hope of finding jurors who are not aware of [defendant's] pending charges" is unfounded. Indeed, saving those members of the panel who had no previous exposure to the case from individual questioning seems an effective way to prevent inadvertent exposure during voir dire. The trial court was within its discretion in ruling as it did. *State*

*v. Ramsey*, 864 S.W.2d 320, 335 (Mo. banc 1993).

#### B.

■ Defendant lists several individual objections made by the prosecutor to his voir dire that the trial court sustained. In all, defendant cites over thirty allegedly erroneous rulings by the trial court. The questions posed by defendant and the trial court's assessment of them are comparable to those at issue in *Kreutzer*. 928 S.W.2d at 861–64. Here, as in *Kreutzer*, the court sustained objections only when appellant's counsel: 1) presented specific fact scenarios the answers to which arguably constituted obtaining a commitment from the venirepersons, 2) asked open-ended questions about how prospective jurors "felt" or "thought" about certain issues, or to compare one venireperson's beliefs to another's, 3) misstated the law or the jury's obligation under the law; or 4) asked confusing, irrelevant, or argumentative questions of the panel. 928 S.W.2d at 864. In each instance, the trial court's limitation of defendant's questioning was reasonable and a proper exercise of the court's discretion in controlling voir dire. *Id.*

Defendant cites *State v. Brown*, 547 S.W.2d 797 (Mo. banc 1977), for the proposition that limiting voir dire as the trial judge did here is reversible error. *Brown* is distinguishable from the present case. There, the defendant was not allowed to ask the venire whether it could "follow the law with respect to the burden of proof on [self-defense]." *Brown*, 547 S.W.2d at 798. This Court held only that the trial court should have allowed a general question about whether the jurors could follow the law. *Id.* at 799. *Brown* did not involve attempts at detailed questioning that fell into the four *Kreutzer* categories. Ironically, defendant takes the position that such general questions about venirepersons' ability to follow the law are insufficient to safeguard his rights. *Brown* is inapplicable to the present case. Here there was no error, plain or otherwise.

#### C.

■ Defendant further contends the trial court erred first in allowing the prosecutor to

attempt to define "reasonable doubt" during voir dire and second in striking those venirepersons who were confused by the improper definition.[3]

Specifically, defendant objects to twelve separate remarks by the prosecutor. With respect to nine of them, no objection was made. On another occasion, the prosecutor withdrew the question. After the remaining two questions, defendant asked the trial court to reread the reasonable doubt instruction to the panel, and the court complied. Based upon the foregoing, defendant has failed to preserve his objection for appellate review. Our gratuitous review is for plain error. *Rule 30.20.* Although the practice of attempting to define "reasonable doubt" has been roundly criticized by our courts, the prosecutor's point that proof beyond a reasonable doubt does not mean proof "beyond all doubt" or "beyond a shadow of a doubt" is legally correct. *State v. Jones,* 615 S.W.2d 416, 419 (Mo.1981) (discussing *State v. Henderson,* 547 S.W.2d 141, 144 (Mo.App. 1976)), and *State v. Harper,* 553 S.W.2d 895, 898 (Mo.App.1977); *State v. Johnson,* 684 S.W.2d 584, 585 (Mo.App.1985). Moreover, the reasonable doubt instruction was read at defendant's request in order to dispel any confusion. Under these circumstances, defendant has failed to demonstrate plain error. *See State v. Spidle,* 967 S.W.2d 289, 293 (Mo.App.1998).

### D.

■ In a related point, defendant objects to the trial court's striking three venirepersons who claimed they would require proof beyond all doubt that defendant was guilty in order to convict. Defendant points to these venirepersons' "unequivocal" indication that they could follow the court's instructions. However, the trial court's decision must be judged based upon the entire examination. *State v. Roberts,* 948 S.W.2d 577, 598 (Mo. banc 1997). Based upon these venirepersons' equally unequivocal indications that they would hold the state to a heightened burden of proof, and mindful of the trial

court's superior position to assess the demeanor accompanying these statements, no abuse of discretion is apparent. *Id.*

### Arrest Records—Point X

#### A.

■ The defendant claims the trial court erred in denying his request that the state disclose the arrest records of venirepersons and state witnesses. Defendant acknowledged in his motion below that such arrest records are not covered by Rule 25.03. Therefore, the issue before this Court is whether the trial court abused its discretion in refusing to order their disclosure under Rule 25.04. *State v. Johnson,* 702 S.W.2d 65, 73 (Mo. banc 1985); *State v. White,* 621 S.W.2d 287, 294 (Mo.1981); *State v. Scott,* 926 S.W.2d 864, 871 (Mo.App.1996).

Defendant makes no allegations that any charges were pending against any of the individuals in the group nor does he contend any "threat," "promise," or "deal for leniency" could have been shown with respect to anyone. *See State v. Beatty,* 849 S.W.2d 56, 60 (Mo.App.1993). Moreover, defendant mentions nothing in the record to suggest the state made use of any arrest records in the prosecution of its case. Absent any evidence showing the disclosure of arrest records would have affected the trial in any way, the trial court did not abuse its discretion in failing to order them disclosed.

#### B.

Defendant also alludes to other information compiled on prospective jurors that should have been disclosed. This claim is completely unreviewable because defendant does not indicate the nature of this information or how it might affect the outcome of his case.

### PENALTY PHASE

#### Point I

■ Defendant contests the admissibility of evidence regarding a prior act of violence. Specifically, defendant's ex-wife Linda Car-

---

**3.** Defendant also invites us to re-examine *State v. Griffin* wherein this Court upheld the constitutionality of our instruction on reasonable doubt. 848 S.W.2d 464, 469 (Mo. banc 1993). The invitation is declined.

ver testified about an incident where defendant shot someone he had seen "messing with [his] car." Defendant did not object at the time Carver testified. Therefore, review is for plain error. Rule 30.20; *State v. Copeland*, 928 S.W.2d 828, 843 (Mo. banc 1996).

Generally, both the state and the defense are given wide latitude to introduce any evidence regarding the defendant's character that assists the jury in determining the appropriate punishment. *State v. Clay*, 975 S.W.2d 121, 132 (Mo. banc 1998). This is so because "[t]he decision to impose the death penalty, whether by a jury or a judge, is the most serious decision society makes about an individual, and the decision-maker is entitled to any evidence that assists in that determination." *State v. Debler*, 856 S.W.2d 641, 656 (Mo. banc 1993). This includes evidence of serious unconvicted crimes. *Debler* at 657.

However, the decisions of this Court require that "evidence of unconvicted misconduct is inadmissible where the state does not provide the defendant with notice that it intends to introduce the evidence." *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998); *see also Clay*, 975 S.W.2d at 132; *Debler*, 856 S.W.2d at 657. *Debler* does not merely recapitulate the basic criminal discovery requirements contained in Rule 25.03. Upon request, the state must disclose evidence of unconvicted bad acts, even if that evidence has not been reduced to a writing or other record discoverable under Rule 25.03. The state admitted at oral argument and before the trial court that it knew Carver would testify about the shooting but failed to disclose to defendant that it intended to introduce evidence about the incident. Under *Debler, Clay* and *Ervin*, the admission of the evidence of the shooting incident without prior disclosure was error.

That having been determined, the question remains whether the admission of this evidence was plain error constituting a manifest injustice or miscarriage of justice. *Rule 30.20*. In *Debler*, this Court discussed the prejudice that generally arises from evidence such as that admitted here:

Because no jury or judge has previously determined a defendant's guilt for uncharged criminal activity, such evidence is significantly less reliable than evidence related to prior convictions. To the average juror, however, unconvicted criminal activity is practically indistinguishable from criminal activity resulting in convictions, and a different species from other character evidence.

856 S.W.2d at 657.

Additionally, under the particular facts of this case, Carver's testimony about defendant's involvement in the shooting is highly prejudicial. First, the shooting was a significant act of violence. Second, the shooting was different in kind from the litany of domestic abuse defendant's two wives recounted. Third, defendant's use of a deadly weapon was similar to the conduct with which the defendant was charged. Fourth, the shooting suggests an unreasonable territoriality, indicating defendant would be a disruptive prisoner. Fifth, the state argued in its closing that the "history of violence" about which Carver testified suggested that the death penalty was appropriate and noted that defendant had "been victimizing other people, manipulating other people, all his life." Moreover, although a timely objection was not made to Carver's testimony, defendant did object immediately after her testimony concluded on the grounds of nondisclosure. The trial court, therefore, had the opportunity to take corrective action and did not do so.[4]

Based on the totality of the circumstances surrounding Carver's testimony, the admission of unconvicted crime evidence that was not previously disclosed is plain error.

The determination of guilt is affirmed. The sentence of death is reversed, and the cause is remanded for a new sentencing hearing. *Section 565.035.5(3)*. Because defendant has been granted a new sentencing hearing, the penalty phase claims raised elsewhere in point I and in points II, III, V, X

---

4. Defendant requested a mistrial, but some corrective action short of a mistrial may well have sufficed. *See State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

and XI need not be reviewed as the claimed errors may not recur at a new hearing.

All concur.