STATE of Missouri, Plaintiff–Respondent,

v.

Robert JOOS, Defendant–Appellant.

No. 21625.

Missouri Court of Appeals, Southern District, Division Two.

April 1, 1998.

Rosemary E. Percival, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

Before PARRISH, P.J., and SHRUM, J., and MONTGOMERY, C.J.

PER CURIAM.

Robert Joos (defendant) was convicted, following a jury trial, of unlawful use of a weapon, § 571.030.1(1),[1] a class D felony (Count I), and resisting arrest, § 575.150, RSMo 1986, a class A misdemeanor (Count II). This court affirms.

On the morning of June 29, 1994, members of the Missouri State Highway Patrol went to defendant's property in Newton County, Missouri, to arrest him on an outstanding warrant for an offense unrelated to the convictions that are the subject of this appeal. Two officers entered defendant's property. They positioned themselves at a location where they could see defendant's residence, but where defendant could not see them if he came outside his residence. Two other officers positioned their patrol cars on a county road outside defendant's driveway. The officers planned to arrest defendant when he exited his property. Defendant's residence was about .6 of a mile off the county road. His driveway ran from the residence to the county road.

The officers who were watching defendant's residence, Sgt. Miles Parks and Sgt. Michael Rogers, saw defendant drive away in a blue Chevrolet van. They contacted the other officers by radio and advised them defendant was coming toward them. Sgt. Parks and Sgt. Rogers followed defendant, on foot, down the driveway.

The officers who were waiting at the county road, Sgt. Steven Dorsey and Cpl. Bob Harper, had positioned their patrol cars on the county road on different sides of defendant's driveway. When defendant's van reached the county road, it turned toward Cpl. Harper's patrol car. Sgt. Dorsey proceeded toward Cpl. Harper's location. As he

---

1. References to statutes are to RSMo Supp.1993 unless stated otherwise.

headed in the direction of Cpl. Harper's car, he saw defendant's van traveling backward toward him. Sgt. Dorsey blocked the road with his patrol car and activated the emergency lights on his vehicle. Sgt. Dorsey and Cpl. Harper got out of their vehicles. The officers were wearing patrol uniforms. Sgt. Dorsey told defendant he was under arrest.

Defendant shouted at the officers and attempted to move his van. Both officers drew their weapons. Sgt. Dorsey approached the van. When he got to it he holstered his weapon and reached inside the van in an attempt to disable it. Defendant was screaming and reaching between the front seats.

Defendant reversed directions several times while Sgt. Dorsey was hanging onto the side of the van until the van became stuck on a pile of gravel alongside the roadway. Cpl. Harper managed to turn off the ignition switch. Defendant refused to get out of the van. When defendant continued to refuse to exit the vehicle, Cpl. Harper sprayed him with mace. Defendant let go of the steering wheel. The officers pulled him from the van. He was subdued and handcuffed and taken to the McDonald County Jail.

Sgt. Parks drove defendant's van to the McDonald County Sheriff's Department where he conducted an inventory search of it. Sgt. Parks found a loaded .32 caliber revolver in a sack between the two front seats.

Defendant's first point on appeal asserts the trial court erred in not dismissing the charges against defendant because he was denied a speedy trial. Defendant was arrested June 29, 1994. On July 6, 1994, he filed a *pro se* pleading requesting, *inter alia*, "a quick and speedy trial." He filed numerous other *pro se* notices and demands while his case was pending. Many included "speedy trial" requests.

Defendant did not seek representation by an attorney until August 1996. Counsel was appointed August 28, 1996. On September 12, 1996, defendant sought to remove his appointed counsel. A public defender entered her appearance September 25, 1996. On March 24, 1997, she filed a motion to

dismiss that included the claim that the state violated defendant's right to a speedy trial. Defendant's trial was held March 26 and 27, 1997.

Section 545.780, RSMo 1994, provides:

1. If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter.

2. The provisions of this section shall be enforceable by mandamus. Neither the failure to comply with this section nor the state's failure to prosecute shall be grounds for the dismissal of the indictment or information unless the court also finds that the defendant has been denied his constitutional right to a speedy trial.

■ A defendant's constitutional right to a speedy trial is established by the Sixth Amendment of the U.S. Constitution. *State v. Davis*, 903 S.W.2d 930, 936 (Mo.App.1995). The determination of whether a defendant in a criminal case was denied his or her right to a speedy trial as guaranteed by the Sixth Amendment is made by applying the analysis set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *State v. Bolin*, 643 S.W.2d 806, 813 (Mo. banc 1983).

Four factors are balanced to ascertain if a defendant was denied the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to speedy trial; and (4) prejudice to the defendant. *State v. Davis, supra.*

■ Factors 2, 3 and 4 are not reviewed unless there is a finding that the length of the delay was presumptively prejudicial. *State v. Bohannon*, 793 S.W.2d 497, 503 (Mo. App.1990). Delays of eight months or more are presumptively prejudicial. *State v. Farris*, 877 S.W.2d 657, 660 (Mo.App.1994). In determining the length of delay, any delays attributable to the defendant are subtracted from the total delay between the time of trial and the time a defendant was formally charged or actual restraints were imposed by arrest and being held to answer criminal

charges. *State v. Fleer*, 851 S.W.2d 582, 596 (Mo.App.1993).

■ Defendant contributed to the total delay in various ways. Regardless, even if credit is given for all delays attributable to him, he was incarcerated in excess of the presumptively prejudicial time of eight months.

The state had the responsibility to bring defendant to trial. *State v. Davis, supra; State v. Bohannon, supra,* at 504. Excuses suggested by the state for its failure to more quickly bring defendant to trial are not persuasive. The length of the delay and the reasons for it weigh against the state.

The requirement in § 545.780, RSMo 1994, for a defendant to request a speedy trial was met. Defendant made various requests for a speedy trial, the first being made within a week of his arrest. He timely asserted his right to a speedy trial.

■ The determinative factor, however, is whether defendant suffered actual prejudice from the delay and, if so, its effect. *Davis,* 903 S.W.2d at 937. Defendant argues that he was prejudiced due to the time that expired between his arrest and trial because he served more jail time than he would have served if there had been an earlier trial; that two defense witnesses died prior to his trial; that he suffered lengthy and severe pretrial anxiety.

Defendant was confined 33 months. He was sentenced to confinement for a term of 33 months on Count I and confinement for a term of one year on Count II. The sentences were ordered to be served concurrently. Defendant was given credit for time served.

The ranges of punishment for the offenses for which defendant was found guilty were five years for the class D felony of unlawful use of a weapon (Count I) and one year for the class A misdemeanor of resisting arrest (Count II). §§ 558.011.1(4) and (5). The trial court could have ordered that the sentences be served consecutively. § 558.026.1, RSMo 1986. The record does not support defendant's claim that he served additional jail time because of the delay in bringing him to trial.

Defendant contends that two witnesses who died between the time he was arrested and tried would have testified he was proceeding peaceably to Arkansas the day he was arrested. A witness who testified for defendant at trial, Carol Covey, testified that she was to meet defendant in Arkansas the morning he was arrested to buy groceries.

The testimony defendant asserts the two deceased witnesses would have provided would have been repetitious of Ms. Covey's testimony. Prejudice does not necessarily result from the unavailability of a witness whose testimony would have been cumulative of testimony presented at trial. *State v. Loewe,* 756 S.W.2d 177, 183 (Mo.App.1988). Defendant has not demonstrated prejudice due to unavailability of the deceased witnesses.

Defendant's claim that he suffered anxiety and weight loss awaiting trial likewise fails to entitle him to a reversal of the judgment of conviction. Anxiety alone does not establish prejudice absent the showing of specific instances that weighed heavily on the defendant. *State v. Fleer, supra,* at 597. The record reveals no specific instances of inordinate anxiety on his part. Defendant failed to demonstrate actual prejudice as a result of the delay in the trial of his case.

■ In addition to defendant's claim that his Sixth Amendment right to a speedy trial was violated, he contends the delay denied him due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution. That claim also fails. More stringent proof of prejudice is required to show denial of the Fifth Amendment right to due process by reason of delay than is required to show denial of the Sixth Amendment right to a speedy trial. *State v. Allen,* 641 S.W.2d 471, 475 (Mo.App.1982). Point I is denied.

■ Point II asserts the trial court erred by allowing the state to present testimony and argument that defendant had a reputation for resisting arrest and carrying concealed weapons; that this was evidence of uncharged crimes or other bad acts not necessary to prove the charges for which he was on trial; that the evidence was offered for

the sole purpose of showing he had a propensity to commit the crimes charged.

The complaint concerning testimony is directed to evidence provided by Sgt. Parks and Sgt. Dorsey. They testified that defendant had a reputation for resisting arrest and carrying a weapon. Defendant's trial attorney objected to the testimony of both witnesses on the basis of hearsay. The attorney also objected to Sgt. Dorsey's testimony on the basis of relevancy.

To preserve a claim of error in the taking of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection. *State v. Walker,* 903 S.W.2d 636, 639 (Mo. App.1995). The grounds asserted on appeal are limited to those stated at trial. *State v. Johnson,* 483 S.W.2d 65, 67–68[5] (Mo.1972). A litigant is not permitted to broaden the objection he presented to the trial court; he cannot rely on a theory different from the one offered at trial. *State v. Herrick,* 814 S.W.2d 660, 663 (Mo. App.1991).

*State v. Phillips,* 939 S.W.2d 502, 505 (Mo. App.1997). Arguably, the claim that the testimony constituted evidence of uncharged misconduct was not the basis of objections made at trial.

■■■ Regardless, evidence of uncharged misconduct is admissible to paint a complete picture of the crimes charged and to explain circumstances that led to the current charges. *State v. Fleischer,* 873 S.W.2d 310, 315 (Mo.App.1994); *State v. Henderson,* 826 S.W.2d 371, 374–76 (Mo.App.1992); *State v. Churchir,* 658 S.W.2d 35, 37–38 (Mo.App. 1983). Evidence is also admissible to explain an officer's conduct in making an arrest. *State v. Sanders,* 761 S.W.2d 191, 192–93 (Mo.App.1988); *State v. West,* 743 S.W.2d 592, 593 (Mo.App.1988).

The testimony about which defendant complains related to the reasons for the precautions taken during his arrest and explained why the officers took the actions they did in subduing him. Knowledge the officers imparted concerning defendant's reputation was sufficiently intertwined with the crimes charged to be an integral part of those offenses. It was admissible.

■■■ The argument by the state about which defendant complains is directed to the prosecutor's statement in closing argument that defendant had been convicted of the misdemeanor offense of simulating legal process; that this was the reason officers were pursuing him. The prosecutor told the jury there had been unsuccessful attempts to arrest defendant before that date. No objection was made to the argument at trial. The complaint defendant now makes was not preserved for appellate review. *State v. Graves,* 588 S.W.2d 495, 499 (Mo. banc 1979); *State v. Lambert,* 904 S.W.2d 582, 583 (Mo.App.1995). Point II is denied.

■■■ Point III asserts the trial court erred in denying defendant's motion to suppress evidence and in admitting in evidence items seized in the search of defendant's van. It contends "the state failed to carry its burden of proof . . . to show by a preponderance of the evidence that the search was justified as a lawful inventory search or a search incident to arrest." The point does not state in what manner the evidence presented at the suppression hearing was not sufficient to establish the validity of the search.

■■■ Rule 30.06(d) requires, "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed *and wherein and why they are claimed to be erroneous . . . .*" (Emphasis added.) In order to state "wherein" the trial court's ruling was erroneous, defendant was required to identify in his point relied on the deficiency he claims the record reveals. *State v. Jenson,* 914 S.W.2d 864, 865 (Mo.App.1996); *State v. Coomer,* 888 S.W.2d 356, 361 (Mo.App.1994). "A point relied on which cannot be comprehended without resort to the argument portion of the brief presents nothing for appellate review." *Id.* Such a point is a nullity. *Id.*

Notwithstanding a lack of duty to review the argument section of defendant's brief to ascertain "wherein" he asserts the trial court erred, in view of the extended argument presented in defendant's brief as well as at oral argument questioning the arresting offi-

cers motive for searching the vehicle, this court has, *ex gratia,* reviewed defendant's claim that the search was pretextual as permitted by Rule 30.20.

Defendant was driving his van when he was arrested by the highway patrol officers. After defendant's arrest, Sgt. Parks drove the van to the McDonald County Sheriff's office. Sgt. Parks told the trial court there were several purposes for removing the vehicle from the site of defendant's arrest. He explained that defendant had been involved "in quite a struggle" with the arresting officers; that defendant was not cooperative. The officers wanted to get defendant to jail as soon as possible and wanted to conduct an inventory search of the van. They took the van to the sheriff's office to have a secure setting in which to conduct the inventory search.

Sgt. Parks was asked what the officers' goal was in removing the van from the arrest site. He answered:

Well, there's—there's several goals here. One thing we wanted, to secure the property. We're not going to leave it there alongside the road where it would be a traffic hazard. It's on the curve of road there. It's high-centered, it cannot be easily removed, so we drove it to the—I drove it to the sheriff's office. We wanted to do a complete inventory. And it was hot at the time. The officers had been involved in a struggle. We wanted to be in a secure setting where we could do it thoroughly.

Sgt. Parks was asked, "So you weren't concerned about [defendant's] property?" He answered, "Sure, we were concerned about getting what was his documented and returned to him. And if there is evidence in there, we wanted to seize the evidence." The colloquy continued:

Q. [by defendant's trial counsel] Were you concerned about protecting yourself against claims for the property?

A. Sure.

Q. Why couldn't this concern have been alleviated by just rolling up the windows and locking the door until someone

that [defendant] had requested could take control of the van?

Following an objection by the prosecutor that the trial court overruled, Sgt Parks answered:

As I have stated, we wanted to secure the van, inventory all the items in the van, make sure what items could be released could be returned to him, and that's the reason it was removed.

Needs to safeguard an owner's property pending its return, to protect arresting officers from claims or disputes over lost or stolen property, and to guard against potential dangers are reasons for the inventory search exception to requirements for a search warrant. *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976). To have left defendant's van in a remote area on a curve parked partially on the traveled portion of the gravel roadway (as photographs in evidence revealed) could have subjected the contents of the vehicle to theft, the officers to claims for losses resulting from theft or from false claims concerning what the van contained, and the public who traveled the roadway to danger from the van's presence.

The evidence was sufficient for the trial court to find that the impoundment and search of defendant's van was not pretextual. That determination reveals no manifest injustice or miscarriage of justice. Point III is denied.

Point IV is directed to comments made during voir dire that defendant asserts violated a ruling the trial court made on a motion in limine. Prior to trial defendant filed a motion in limine requesting the trial court to prohibit "any reference in voir dire, opening statement, evidence or argument to any acts of or offenses alleged to have been committed by the defendant other than the offense for which defendant is on trial." The motion stated various "grounds" for the request, including that defendant "ha[d] reason to believe" the state might "mention ... the church property as a 'compound', 'Waco' or 'Survivalist Group, Organization or Training Facility' ".[2]

2. Defendant asserted he was the minister of a     church. Among the beliefs he professed was that

The trial court granted the part of the motion in limine directed to mentioning church property as a compound, Waco, survivalist group, organization or training facility on voir dire. During voir dire the prosecutor asked prospective jurors if any of them were members, contributed money to, or supported in any way the Nazarite Church, the Freeman movement, or the 51st Area Militia. Defendant's trial attorney objected and requested mistrial on the grounds that the state violated the limine order by asking the question. The trial court sustained the objection as to any further mention of the groups on voir dire. It denied the request for mistrial.

Point IV claims the trial court erred in denying the request for mistrial "in that the references tainted [defendant] as a subversive and were intended solely to prejudice [defendant]." Arguably, the question asked on voir dire concerning contributions by prospective jurors to, membership in or support of the named organizations was not included in the trial court's prohibitory order. Regardless, "[a] trial court has wide discretion in determining whether to impose the drastic remedy of mistrial." *State v. Archer,* 814 S.W.2d 315, 319 (Mo.App.1991). The trial court is in a better position to determine if prejudice results from trial conduct and, if so, whether it is so grievous that it requires mistrial. *State v. Thompson,* 835 S.W.2d 394, 398 (Mo.App.1992).

A trial court's ruling concerning questions asked during voir dire will not be disturbed absent abuse of discretion in its control of that inquiry. *State v. Gray,* 887 S.W.2d 369, 382 (Mo. banc 1994), *cert. denied,* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). In order for an appellate court to reverse a trial court's refusal to grant a mistrial, a review of the entire record must convince it that, as a matter of law, error occurred that was so prejudicial that its effect was not removed by the action the trial court took. *State v. Thompson, supra.*

This court's review of the entire record does not leave it possessed with a belief that the question on voir dire about which defen-

dant complains in Point IV, if in fact it violated the limine order, was so prejudicial that it mandated the trial court's declaring mistrial. Point IV is denied. The judgment is affirmed.

parishioners should be armed at all times for self-protection.