STATE of Missouri, Respondent,

v.

Larry Dale TAYLOR, Appellant.

No. 25954.

Missouri Court of Appeals, Southern District, Division Two.

July 5, 2005.

Amy Bartholow, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shawn L. Naccarato, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant Larry Dale Taylor ("Defendant") appeals his conviction, following a jury trial, for two counts of assault of a law enforcement officer in the second degree, violations of section 565.082, and one count of resisting arrest, a violation of section 575.150.[1] Defendant was sentenced to concurrent sentences of twenty years imprisonment for felony assault of a law enforcement officer in the second degree; one year confinement in the county jail for misdemeanor assault of a law enforcement officer; and seven years imprisonment for resisting arrest. Defendant now alleges two points of trial court error discussed more fully below. We affirm the judgment of the trial court.

Defendant does not challenge the sufficiency of the evidence to support the judgment. This Court accepts as true all evidence supporting the verdict, including all favorable inferences therefrom and disregards all contrary evidence and inferences. *State v. Dunn*, 21 S.W.3d 77, 79 (Mo.App. 2000).

The record reveals that on the evening of October 26, 2001, two McDonald County Sheriff's Department officers, Deputy Harvey Gow ("Gow") and Sergeant Carl Cosper ("Cosper"), along with two reserve officers, went to Defendant's home to arrest him on two outstanding parole warrants. Cosper knocked on Defendant's door and the door was opened by a young woman who was later identified as Jeanie Bird ("Bird"). Bird refused to allow the officers to enter the residence even after the officers informed her that they had a warrant. When the officers were finally able to enter the residence, they located Defendant and informed him that he was under arrest. As Cosper approached Defendant with handcuffs in hand, Defendant pulled a knife out from behind his back, raised the knife over Cosper's head "as if to stab [him] in the chest area," and told the officers to leave his house. Gow immediately drew his service weapon and pointed it at Defendant. Gow told Defendant to "[d]rop the knife." Defendant threatened that if the officers touched him, he would kill them. The officers were able to convince Defendant to drop his knife and Gow then put his weapon away. As the officers continued to discuss Defendant's outstanding warrants with him, he again became agitated and pulled a second knife from his waistband. At that time he told the officers "let's get it on right here, right now. Either you kill me or I'm going to kill you." Again the officers were able to convince Defendant to put the knife down. After further discussion with Defendant, he agreed to speak with either Chief Deputy Tom West ("West") or Sheriff Robert Evenson ("Evenson") about possibly turning himself in.

Cosper called Evenson and informed him of the situation at Defendant's residence. Evenson called the Special Emergency Response Team ("SERT") for assistance and proceeded to Defendant's home. While Cosper and Gow awaited Evenson's arrival, they continued to talk calmly with

---

1. One of the aforementioned assault counts was a Class B felony and the other count was a Class A misdemeanor. Several other charges against Defendant were dismissed. Defendant was also charged and sentenced as a prior and persistent offender pursuant to section 558.016.

Unless otherwise stated, all statutory references are to RSMo 2000 and all rule references are to Missouri Court Rules (2005).

Defendant. While they were talking with Defendant, Defendant removed a large medieval battle axe from a wall in his home and began to carry it around with him.

Upon their arrival, Evenson and West talked with Defendant in his bedroom and it became clear to them that Defendant was not going to leave the residence peacefully. While Evenson and West were talking with Defendant in his bedroom, the SERT officers arrived. Evenson told Defendant that he was going to go call the judge to see if he could get permission to have Defendant turn himself in the next day and Evenson and West exited the bedroom.

In the meantime, the SERT officers stationed themselves in Defendant's bathroom and planned to lure Defendant out of the bedroom and either set off a "flash bang" distraction device or shoot Defendant with a beanbag gun. Cosper got Defendant to come out of his bedroom by requesting some aspirin. When Defendant emerged from his bedroom, the SERT officers attempted to set off the "flash bang" device, but the device failed to detonate. The team then shot Defendant in the chest or stomach with a beanbag gun in an effort to subdue him; however, when Defendant was struck with the beanbag he pulled two knives out of the waistband of his pants and threatened to kill all of the officers on the scene. Defendant was then shot with the beanbag gun a second time, which forced him to drop at least one of the knives. Defendant then fled into his bedroom and shut the door. With Bird barricaded in his bedroom with him, Defendant tried to use the battle axe to hold the door closed. The officers attempted to gain entry into the bedroom by kicking down the door, but ended up engaged in a pushing match with Defendant on the other side of the door. Defendant offered to allow Bird to leave the room and the officers moved away from the door to allow her to exit. Once Bird left the room, Defendant again barricaded the door and refused to emerge. When the SERT officers forced the bedroom door open, they "dog-piled" Defendant and handcuffed him. Gow then put leg irons on Defendant and he was taken into custody.

Following a jury trial, Defendant was convicted and sentenced to a total of forty-eight years imprisonment. This appeal followed.

In his first point on appeal, Defendant maintains the trial court plainly erred in allowing the State to discuss the fact that Defendant was on parole at the time he committed the offenses for which he was convicted. Defendant argues that such a plain error resulted in manifest injustice and violated his right to due process. Defendant's second point on appeal asserts the trial court plainly erred in failing "to quash the venire panel sua sponte and declare a mistrial." Specifically, he maintains that "in front of the entire [jury] panel, several venirepersons implied that [Defendant] was a bad person who had committed bad acts in the past ...;" accordingly, the entire panel was "poisoned" and Defendant did not receive "a fair trial from an impartial jury."

Defendant concedes that both allegations of trial court error were not properly preserved for appeal and that he failed to raise either matter in his motion for new trial as required under Rule 29.11(d). Nonetheless, he now requests this Court to review his points for plain error.

■■ " 'An assertion of plain error under Rule 30.20 places a much greater burden on a defendant than an assertion of prejudicial error.' " *State v. Reynolds*, 72 S.W.3d 301, 305 (Mo.App.2002) (quoting *State v. Deckard*, 18 S.W.3d 495, 497 (Mo.

App.2000)). Rule 30.20 provides, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." If in our discretion we decide to review Defendant's claim of plain error, Defendant must show that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice would result if the error is left uncorrected. *State v. White*, 92 S.W.3d 183, 189 (Mo. App.2002). Plain error "is error that is evident, obvious and clear." *White*, 92 S.W.3d at 189. "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *Id.*

Defendant's first point on appeal states in full:

> The trial court plainly erred, resulting in manifest injustice, by: 1) allowing the State to tell the jury during opening statement that at the time of the alleged offenses [Defendant] was a parolee, that parole warrants had been issued two different times for parole violations, and that there was another outstanding bench warrant for [Defendant's] arrest for felonious restraint; 2) allowing the State to call parole officer Nancy Manire as a witness for the sole purpose of establishing that [Defendant] was on parole and that two warrants had been issued for his parole violations; 3) allowing the State to elicit from law enforcement witness that they had arrested [Defendant] on previous occasions and had gone to his home to serve parole warrants; 4) allowing the State to introduce the physical warrants into evidence; 5) allowing cross-examination of [Defendant] as to his parole status, his failure to report or complete drug screens, and 6) in failing to declare a mistrial sua sponte after the introduction of all of this evidence, because the trial court's failure to act violated [Defendant's] right to due process of law and a fair trial by a fair and impartial jury guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution and Article I, Sections 10 & 18(a) of the Missouri Constitution, in that [Defendant's] parole status constituted evidence of uncharged crimes was unnecessary to explain the officer's conduct in going to his home, and was more prejudicial than probative on any issue at trial, and led the jury to infer that [Defendant] must be guilty of the present offenses.[2]

During its opening statement in the present matter, the State remarked that on the evening of Defendant's arrest, Defendant's probation and parole officer had issued "two warrants for [Defendant's] arrest...." A "felony warrant ... for [Defendant's] failure to cooperate and give a drug screen ..." was issued along with a bench warrant "for [Defendant's] arrest on another pending charge, and that charge was felonious restraint."

---

2. In both of Defendant's points relied on, he lumps numerous assertions under each point relied on. "Points containing multifarious allegations of error violate [Rule 84.04]." *State v. Thompson*, 985 S.W.2d 779, 784 n. 1 (Mo. banc 1999); *see also Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978). "All this has required the Court to parse the points and dissect the argument to discern the gist of the several claims. A point relied on is not the place for rambling, makeweight argument." *Thompson*, 985 S.W.2d at 784 n. 1. While arguments which violate Rule 84.04 are not required to be reviewed by this Court, we have chosen to review Defendant's points *ex gratia*. *Mace v. Daye*, 17 S.W.3d 154, 156 (Mo.App.2000).

In its case in chief, the State called Defendant's probation and parole officer, Nancy Manire ("Manire") to establish that "there was an active warrant that was proper" when the police went to Defendant's home on October 26, 2001. Manire testified that indeed Defendant was on parole at the time of his arrest; that he had violated the terms of his parole on two occasions; and, that two parole warrants had been issued for his arrest. When the State tried to clarify Manire's testimony about the reasons for the issuance of the warrants, Defendant objected to that line of questioning on the basis that Manire would be "talking about prior bad acts or bad offenses ... that have nothing to do with this particular charge concerning assault...." The trial court sustained the objection "as to bad acts" and ruled that the State "will be allowed to—to tell this jury that there are two warrants for him and when those were issued." Manire then testified that one warrant was issued on April 20, 2001, and the other warrant was issued on May 22, 2001.

Shortly thereafter, the State introduced into evidence a "certified record of another warrant for [Defendant's] arrest issued by [Judge] John LePage." Defendant stated there was "[n]o objection" to the introduction of the additional warrant.

Additional testimony related to the warrants was elicited through Gow and Cosper, whose testimony confirmed that the officers were at Defendant's home in order to serve two warrants and arrest him. Further, Cosper stated that they had "arrested [Defendant] previously [on] a different day." On cross-examination by Defendant's counsel, Cosper went on to state that he recognized Defendant because he had "arrested him prior to [the evening in question]." Defendant's counsel then asked Cosper if Defendant's previous arrest had been "for that case that was dismissed, the one that was the alleged assault?" The State objected that the question "assumes facts not in evidence" and the trial court then told Defendant's counsel, "I am now going to admonish you publicly in front of the jury for your conduct. You were told not to go into this area. You will be allowed to inquire on that case if you so choose." Later, the trial court changed its ruling and informed the State that it would "not be allowed to go in to [sic] the other case."

 It is generally recognized that a criminal defendant has a right to be tried only for the offense for which he is charged. *State v. Pennington*, 24 S.W.3d 185, 189 (Mo.App.2000). "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is not admissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998). " 'Proffered evidence will run afoul of th[is] rule ... if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes.' " *State v. Wallace*, 952 S.W.2d 395, 397 (Mo.App.1997) (quoting *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989)).

 However, there are many exceptions to the general rule. "[*State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993) ] recognizes five categories of exceptions to the general rule prohibiting admission of evidence of uncharged misconduct and adds a sixth exception." *State v. Roberts*, 948 S.W.2d 577, 591 (Mo. banc 1997). "Such evidence is admissible if it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to

establish the other; (5) the identity of the person charged with the commission of the crime on trial; or (6) a signature modus operandi [where nearly identical incidents are so unusual and distinctive as to corroborate the victim's testimony]." *Id.* Further, "evidence of uncharged misconduct is admissible to paint a complete picture of the crimes charged and to explain circumstances that led to the current charges." *State v. Joos,* 966 S.W.2d 349, 354 (Mo. App.1998). In "paint[ing] a complete and coherent picture of the crime charged, [the State] is not required to sift and separate the evidence." *State v. Fleischer,* 873 S.W.2d 310, 315 (Mo.App.1994); *see also State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App.1992). Such "evidence is also admissible to explain an officer's conduct in making an arrest." *Joos,* 966 S.W.2d at 354. Furthermore, "[t]he mention of outstanding warrants may be admissible to provide a clear and coherent narrative of the circumstances preceding the arrest." *State v. Sanders,* 761 S.W.2d 191, 192 (Mo. App.1988) (holding that the mention that defendant was "wanted" or the subject of an "arrest warrant" for an unrelated offense is admissible to provide a clear and coherent narrative of the circumstances preceding the arrest).

▮▮▮▮ To be admissible, evidence of prior bad acts must be "both logically and legally relevant." *Roberts,* 948 S.W.2d at 591. "[E]vidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial ..." and such evidence "is legally relevant, in that its probative value outweighs its prejudicial effect." *Bernard,* 849 S.W.2d at 13. The trial court, in its discretion, determines the admissibility of other crimes evidence by evaluating whether the prejudicial effect of the evidence outweighs its probative value. *State v. Hamilton,* 817

S.W.2d 8, 11 (Mo.App.1991). Trial courts have broad discretion in determining whether to admit or exclude evidence. *State v. Simmons,* 944 S.W.2d 165, 178 (Mo. banc 1997). A trial court's admission of irrelevant and immaterial evidence, even of other crimes, will not be reversed on appeal absent a showing of prejudice. *State v. Hampton,* 648 S.W.2d 162, 166 (Mo.App.1983).

Here, the testimony related to the issuance of parole warrants for Defendant's arrest was admissible to provide a clear and coherent narrative of the circumstances preceding his arrest. *Sanders,* 761 S.W.2d at 192.

First, we note that "[t]he mere existence of warrants does not prove appellant guilty of any prior offense." *Sanders,* 761 S.W.2d at 192. Second, "the testimony in [Defendant's] case not only explained the legality of his arrest but helped explain [to the jury] why two [police officers] had entered [Defendant's] home ..." in an effort to arrest him. *Id.* at 193. Third, the trial court was "careful to deny the admission into evidence of the *details* ..." underlying the issuance of the arrest warrants. *State v. Churchir,* 658 S.W.2d 35, 38 (Mo.App.1983). When Manire testified vaguely about the reasons behind the issuance of the arrest warrants, the trial court limited her testimony to whether there was an "active warrant that was proper." Such evidence is admissible "to present a complete and coherent picture of the events that transpired." *State v. Morrow,* 968 S.W.2d 100, 107 (Mo. banc 1998) (quoting *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc 1994)).

Turning to the issue of whether references to Defendant being on parole constituted inadmissible prior bad acts evidence, we acknowledge that a "reference to parole [c]ould indicate to the jury that defendant had earlier been convicted of a

crime." *State v. Brown,* 670 S.W.2d 140, 141 (Mo.App.1984). However, in the present matter Defendant himself took the stand at trial and personally detailed a list of his prior convictions. On direct examination by his own attorney, Defendant acknowledged that he had previous felony convictions. Defendant testified that he was convicted of "[p]ossession and manufacturing of marijuana;" "in 1970, [he] was convicted of brandishing a weapon;" and, he "was convicted by a jury back about ... '71—for stealing and got 90 days in jail." On cross-examination, Defendant again admitted the foregoing prior convictions. Accordingly, where Defendant admitted on the stand the evidence about which he complains, we fail to see how mere references to the fact that Defendant was on parole were prejudicial to Defendant. Such evidence certainly is not sufficiently prejudicial to warrant a reversal. *See Sanders,* 761 S.W.2d at 192. It was Defendant's burden to show the trial court committed plain error such that manifest prejudice affecting his substantial rights occurred. *Hornbuckle,* 769 S.W.2d at 92–93. In the instant case, there is no plain error falling within these guidelines. Defendant's first point is denied.

■ Defendant's second point on appeal asserts the trial court's failure to *sua sponte* declare a mistrial and quash the entire jury venire was plain error which resulted in manifest injustice. Accordingly, Defendant maintains his constitutional rights were violated in that several jurors implied he "was a bad person who had committed bad acts in the past."

In the present matter, during jury voir dire, the trial court acknowledged the fact that they lived in a small community and there would inevitably be some jurors who knew Defendant personally. First, Venireperson Gary Poyner ("Poyner") responded that he knew Defendant because he "used to be a bar operator and [Defendant] used to come in and give [him] a hard time...." [3] Following Poyner's comment, the trial court again read the jury instructions to the venire panel and emphasized that its concern was for their impartiality.

Thereafter, Venireperson Patricia Parsons ("Parsons") indicated that she "could not really be fair about [Defendant] because" she knew him and "what he has done in the past." The trial court called counsel to the bench and made the decision to immediately dismiss Parsons from the venire.

Further, Venireperson Nathan Obenshain ("Obenshain") indicated that he knew Officer Gow through "the D.A.R.E. program" and stated that he had "had several dealings with [Defendant]." The State then instructed Obenshain that it did not "want to get in to what [he] knew" but it just wanted to know if Obenshain "might have trouble being fair and impartial to both sides." Obenshain stated that he did not "think [he] could be fair to either side ... knowing what [he] kn[e]w, and [he] wouldn't want to jeopardize any other jurors...." He was later stricken from the panel.

Later, Venireperson Dorothy Moore ("Moore") stated that she worked with Defendant "maybe 25 or 30 years ago, when he was a real young man," but she had no feeling either way "other than the fact of what [she] read in the newspaper." Also, Moore indicated she knew Defendant's mother but she had not "been in contact with them in several years...." When

**3.** Poyner was later dismissed by the trial court because if his relationship with Defen- dant.

asked about her impartiality, Moore stated, "Well, I don't know that I'd know any more about [the case] than anyone else, but when I knew [Defendant], he wasn't like this now." At that time, the trial court again called counsel for both sides to the bench and told them that "the last thing [it] want[ed][wa]s to declare an early mistrial. So any questioning on this issue, any other individuals that raise their hands [would be] take[n] up in the absence of the rest of the jurors." Moore was later stricken from the panel. Defendant never objected to the various statements made by the venire panel and failed to request a mistrial.

■■■ "Appellate courts are wary of claims that a trial court erred in failing to declare a mistrial *sua sponte* in a criminal case." *State v. Derrick,* 965 S.W.2d 418, 419 n. 1 (Mo.App.1998). "Consequently, a judge who declares a mistrial in a criminal case *sua sponte* may thereafter be confronted by the defendant's contention that he cannot be retried." *Id.* "To convict a trial court of an error, not put forth by the defendant (e.g., failure to declare a mistrial *sua sponte*), allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and then seek favorable results on appeal." *State v. Tilley,* 104 S.W.3d 814, 819 (Mo.App.2003). "This puts courts in an untenable position, and it is contrary to the principle of law that an appellate court will not convict a trial court of an error not put before it to decide." *Id.* at 819–20.

■■■ With that being said, "[t]he trial court is in the best position to determine the impact of a juror's statement upon other members of the panel." *State v. Kelley,* 83 S.W.3d 36, 41–42 (Mo.App.2002). "Control of *voir dire* is within the discretion of the trial court; only abuse of discretion and likely injury justify reversal."

*State v. Taylor,* 944 S.W.2d 925, 933 (Mo. banc 1997).

■■■ The trial court is vested with broad discretion in determining whether a jury panel should be dismissed because of statements made by an individual juror. *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). Its ruling will not be disturbed on appeal unless there is a clear abuse of discretion. *Id.* The entire venire panel will be quashed only if a remark by an individual juror is so inflammatory and prejudicial that it deprives the defendant of his right to a fair trial. *Id.; State v. Weekley,* 92 S.W.3d 327, 330 (Mo.App. 2002). Defendant "has the burden to show prejudice when making a claim that the impartiality of the panel has been tainted by comments made during the voir dire." *State v. Reed,* 789 S.W.2d 140, 141 (Mo. App.1990); *see State v. Sumowski,* 794 S.W.2d 643, 647 (Mo. banc 1990).

Here, Poynor indicated that he knew Defendant because when he worked in a bar, Defendant "used to come in and give [him] a hard time a lot." However, there was no indication that Poynor believed Defendant to be guilty based on his past knowledge of Defendant's behavior, nor was there any indication that Poynor could not be impartial in the matter. His dismissal by the trial court was based on his "relationship with [Defendant]." "He made no suggestion that he knew anything about [Defendant's] guilt." *State v. Sprinkle,* 122 S.W.3d 652, 669 (Mo.App.2003). "This comment merely made him inappropriate to sit on the jury panel, and he was properly excused for cause." *Id.*

As for Parsons, she not only admitted that she knew Defendant, but also admitted she could not be impartial if she sat on the jury due to her knowledge of Defendant's past behavior. Parsons' statement did not reveal any specific acts of past behavior by Defendant. It has long been

held that "[d]isqualification of an individual juror due to remarks indicating bias or prejudice is generally not a sufficient ground in itself to challenge the entire jury panel." *State v. Jordan*, 947 S.W.2d 95, 96 (Mo.App.1997).

Obenshain stated that he "had several dealings with [Defendant]" but did not state he thought Defendant was guilty. He stated that he could not "be fair to either side." Further, Obenshain's statement about Defendant was vague as to what kind of "dealings" he may have had with Defendant. "The comment did not refer to any prior bad acts of [D]efendant, nor clearly indicate that [Obenshain] had a negative view of [Defendant]." *Kelley*, 83 S.W.3d at 42.[4] "The trial court could consider this ambiguity and [Obenshain's] impassive tone in concluding that the comments were not so inflammatory as to prejudice the jury panel against [Defendant]." *Id.; see also Moss v. State*, 10 S.W.3d 508, 513 (Mo. banc.2000).[5]

Moore stated she knew Defendant and his Mother and that she had worked with Defendant when he was younger. She stated that she was not sure about her impartiality. As with Obenshain, Moore did not specifically "refer to any prior bad acts of [Defendant]" nor did she at all indicate that she "had a negative view of [Defendant]." *Kelley*, 83 S.W.3d at 42. Further, Moore indicated she might be able to "give both sides a fair trial, [such that] the venire could infer she did not assume [Defendant] was guilty and would base her decision on the evidence." *State v. Crenshaw*, 852 S.W.2d 181, 184 (Mo.App. 1993).

Moore's comments simply "made h[er] inappropriate to sit on the jury panel, and [s]he was properly excused for cause." *Sprinkle*, 122 S.W.3d at 669.

The trial court is in the best position to decide the impact of such comments on the jury. *Weekley*, 92 S.W.3d at 330. As the Supreme Court of Missouri stated in *State v. Bynum*, 680 S.W.2d 156, 160 (Mo. banc 1984),

> There is a strong presumption that the jury tendered at the outset of the trial has been properly selected. One who would challenge the jury panel must do so before trial, by pleading and proving fatal departures from the basic procedural requirements. A defendant cannot stand trial, hoping for acquittal, and then challenge the selection of the jury which convicts. Even so, there is a degree of tolerance, and a panel will be held to be improperly constituted only for substantial reasons.

The comments by the members of the venire panel in the present case were not so inflammatory or substantial as to prejudice Defendant and deprive him of a fair trial, especially considering Defendant's objection was not preserved at trial.

---

4. In *Kelley*, a venireperson admitted that he attended high school with the defendant and had seen the defendant at the store where he worked. *Kelley*, 83 S.W.3d at 42. Based on this, the venireperson stated, "I know about [defendant], so, no, I could not be impartial." *Id.* The trial court ruled that the venireperson's "rather impassive" statement was vague and overruled the defendant's objection that the venireperson's statement had tainted the jury panel. *Id.*

5. In *Moss*, "[o]ne stricken venireperson lived in co-defendant['s] ... neighborhood and said of him, 'I just know what that kid can be like.' Another said she knew both co-defendants through church because her husband had visited them in jail." *Moss*, 10 S.W.3d at 513. The *Moss* court found that "[w]hile these statements could be construed as derogatory toward Moss, their meaning is ambiguous, and they do not support a finding that the entire venire panel was tainted." *Id.*

As stated previously, for Defendant to prevail on his claim of plain error he must show that the court's failure to *sua sponte* grant a mistrial so substantially affected his rights that a manifest injustice or miscarriage of justice will inexorably result if left uncorrected. *State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999). In applying this standard, we are mindful that a mistrial is a drastic remedy that should be used sparingly and granted only in extraordinary circumstances. *State v. Clover,* 924 S.W.2d 853, 856 (Mo. banc 1996). Defendant has failed to prove that he was prejudiced by the trial court's failure to *sua sponte* declare a mistrial. Defendant's second point is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., concurs in result in separate opinion.

BATES, C.J., concurs.

JOHN E. PARRISH, Presiding Judge, concurring.

I concur in the result reached; that the judgment of conviction is to be affirmed. I would do so, however, on the basis that the two points appellant seeks to raise were not preserved for appellate review in that they were not raised in his motion for new trial as required by Rule 29.11(d). I would decline appellant's request for plain error review of those issues.

"The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). In my opinion it is readily apparent that there is no substantial ground for believing that either of the claims of error appellant now asks this court to review constitutes a substantial ground for finding there was manifest injustice or miscarriage of justice. *See* Rule 30.20. I would, therefore, decline to grant plain error review and affirm the judgment of conviction for the reason that the points appellant raises were not preserved for appellate review.