**STATE of Missouri, Plaintiff–Respondent,**

v.

**Richard OPLINGER, Defendant–Appellant.**

**No. 27036.**

Missouri Court of Appeals,
Southern District.
Division Two.

March 31, 2006.

---

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cecily L. Daller, Asst. Atty. Gen., Jefferson City, for Respondent.

BATES, Chief Judge.

Richard Oplinger (Defendant) was found guilty by a jury of robbery in the first degree and armed criminal action. *See* § 569.020; § 571.015.[1] The trial court found Defendant to be a prior offender, sentenced him to thirty years imprisonment on each conviction and ordered the sentences to run concurrently. On appeal, Defendant claims the trial court plainly erred in allowing the prosecutor to cross-examine Defendant about his use of methamphetamine the night before the robbery occurred. Defendant argues that this line of questioning was irrelevant and that the prejudicial impact of allowing the prosecutor to explore Defendant's drug use prior to the crime exceeded the probative value of the answers given. We affirm.

Defendant does not challenge the sufficiency of the evidence to support his conviction on either offense. Viewed in a light most favorable to the verdict, the following facts were adduced at trial.

In September 2002, Billy Castlebury (Castlebury) lived in an apartment complex in Pierce City, Missouri. Terry Lucker (Lucker) lived in the same complex. On September 29th, Defendant arrived at Lucker's apartment to spend the night there. Lucker introduced Defendant to Castlebury. That evening, Defendant and Lucker shared a 30–pack of beer. Defendant also ingested a gram of methamphetamine.

At around 11:00 a.m. on September 30th, Defendant and Lucker ran out of beer. By that point, Defendant had consumed at least 12 beers. Defendant only had four or five dollars, so he persuaded Castlebury to purchase another 30–pack of beer for Defendant and Lucker. This purchase took place at approximately 12:30 p.m. Billy drank one of the beers, and Defendant consumed a couple more beers on the way back to the apartment complex. Later that afternoon, Castlebury was asked by Defendant to drive him "somewhere so he could get some money . . . ." Defendant said he knew a lady at the Casey's store in Pierce City from whom he could get money. Castlebury drove Defendant to the store and parked outside. Castlebury remained in the car, and Defendant went inside.

Defendant entered the store at about 2:10 p.m. Sheryl Prather (Prather) was working as the store's cashier that day and saw Defendant enter the store. He was wearing a green shirt. He walked around for about 20 minutes looking at items on the shelves. Defendant then approached the counter, which had some newspapers stacked on it. While Defendant complained to Prather about the high cost of cigarettes, she turned away from the counter to activate the gas pumps for some customers outside. When she turned back around, Defendant was holding a newspaper in his hand. There was a big, black gun lying on top of the paper. Defendant had his finger on the gun's trigger. Defendant told Prather that she could do it

1. All references to statutes are to RSMo    (2000).

the easy way or the hard way. He ordered her to give him the cash from the drawer, or he would shoot her. While Prather was emptying the cash drawer and placing the money in a paper bag, Defendant draped the newspaper over the gun to hide it from view. He continued to point the weapon at Prather the entire time. While the robbery was in progress, Castlebury opened the door, told Defendant to hurry up and then walked away. Defendant left the store within a minute or two.

When Defendant walked back to the car, he was carrying a newspaper and a brown paper sack. Defendant told Castlebury to go and kept looking back over his shoulder as they were driving away from the store. Defendant said he had gotten some money. Castlebury did not know that the store had been robbed. He drove Defendant back to the apartments and then took him to his mother's house in Purdy, Missouri. Defendant told Castlebury that if they were stopped for some reason, Defendant might have to get out and run because he had some outstanding warrants. After the robbery, police obtained permission to search Lucker's apartment. A green t-shirt and a black B.B. pistol were found inside the residence. Defendant was arrested and charged with first degree robbery and armed criminal action.

At trial, Defendant testified on his own behalf. During direct examination, Defendant said he arrived at Lucker's apartment on September 29th. Defendant and Lucker stayed up all night drinking beer. According to Defendant, it was Castlebury's idea to go to the Casey's store on September 30th. Castlebury asked Defendant if he wanted to make some easy money. All Defendant had to do was go to the Casey's store and tell Prather that Castlebury had sent Defendant to pick up the money. De-

fendant denied having a gun. He went inside and told Prather that Castlebury had sent him "to pick up this money." Defendant told Prather to place the money in a paper sack. After Prather placed all of the bills and change from the register in the sack, Defendant took it and left the store. He also admitted having a 1997 felony conviction for "possession of medicated pills."

On cross-examination, Defendant testified that he had previously used drugs with Lucker. When the prosecutor asked if Defendant had been using methamphetamine on the night of September 29th, defense counsel objected on the ground that this referred to uncharged bad acts. The judge overruled the objection. Defendant admitted that he had methamphetamine in his system and that he was a heavy drug user. He had stayed up all night drinking with Lucker. Defendant consumed at least 12 beers and also used a gram of methamphetamine. When the prosecutor asked if one-quarter of a gram was a typical user's amount, the court sustained an objection to the question. Defendant denied that he needed money to obtain more drugs because he still had some left.

The jury convicted Defendant of first degree robbery and armed criminal action. This appeal followed.

■ Defendant presents one point on appeal. He contends the trial court committed plain error in permitting Defendant to be cross-examined about using methamphetamine the night before the robbery occurred. Defendant concedes that he did not properly preserve the alleged error he is asserting on appeal because he failed to include the matter in his motion for new trial. He requests that this Court review

for plain error pursuant to Rule 30.20.[2]

■ Plain error review is discretionary. *See State v. Thurston,* 104 S.W.3d 839, 841 (Mo.App.2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). For relief under the plain error rule to be warranted, a defendant must demonstrate "the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo. App.2000). Thus, we cannot grant Defendant a new trial based on plain error unless the error was "outcome determinative." *Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002); *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo. banc 1999).

■ A request for plain error review requires us to go through a two-step analysis. *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999). First, we determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Stanley,* 124 S.W.3d 70, 77 (Mo.App.2004). In effect, we must determine "whether, on the face of the claim, plain error has, in fact, occurred." *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001); *State v. Brown,* 97 S.W.3d 97, 100 (Mo.App.2002). For plain error to exist, the error must be evident, obvious and clear. *State v. Griffin,* 172 S.W.3d 861, 864 (Mo.App.2005); *State v. Taylor,* 166 S.W.3d 599, 604 (Mo. App.2005). Only if facially substantial grounds are found to exist do we then move to the second step of this analysis and determine whether a manifest injustice or miscarriage of justice has actually occurred. *Stanley,* 124 S.W.3d at 77.

Defendant claims that the admission of testimony concerning his use of a gram of methamphetamine the night before the robbery constitutes plain error because this evidence was irrelevant, and its prejudicial impact outweighed any possible probative value. He also contends the evidence concerning his use of methamphetamine was inadmissible because it disclosed other crimes committed by him. Neither argument is persuasive.

■ "Trial courts have broad discretion in determining whether to admit or exclude evidence." *Taylor,* 166 S.W.3d at 606. The trial judge is also in the best position to weigh the probative value of the evidence against its prejudicial effect. *State v. McNeal,* 986 S.W.2d 176, 179 (Mo. App.1999). We will uphold the judge's ruling, absent a clear abuse of discretion. *State v. Simms,* 131 S.W.3d 811, 816 (Mo. App.2004); *State v. Anglin,* 45 S.W.3d 470, 472 (Mo.App.2001).

In the case at bar, Prather and Castlebury were the only witnesses called by the State who testified from their own personal knowledge about the robbery. To refute their testimony, Defendant took the stand in his own defense. By doing so, he became subject to impeachment and contradiction just like any other witness. *State v. Francis,* 997 S.W.2d 74, 78 (Mo. App.1999); *State v. Selvy,* 921 S.W.2d 114, 116 (Mo.App.1996). Therefore, the State had a right to ask questions designed to test Defendant's recollection, the accuracy of his testimony, his veracity and his credibility. *State v. Jackson,* 768 S.W.2d 614, 616 (Mo.App.1989).

■ Any possible impairment of a witness's ability to recall is relevant to his or her credibility. *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 106 (Mo. banc 1996). "A witness' abnormality is a standard ground for impeachment and one

---

**2.** All references to rules are to Missouri Court  Rules (2005).

form of abnormality is that which exists when one is under the influence of drugs or drink. If a witness is 'under the influence' at the time of the occurrence or at the time he testifies, this condition is provable, on cross or by extrinsic evidence, to impeach." *State v. Myers*, 538 S.W.2d 892, 897–98 (Mo.App.1976).

That is exactly what occurred here. The State's cross-examination of Defendant established that he had been up all night, drinking and using drugs. He continued to consume alcohol until shortly before the crime was committed. Thus, one purpose of the State's cross-examination was to elicit testimony from Defendant concerning the nature, quantity and timing of his ingestion of intoxicants before the robbery. This line of cross-examination was directly relevant to Defendant's credibility and his ability to perceive the events about which he was testifying, and the probative value of this evidence outweighed any possible prejudicial impact.[3] Therefore, the trial court did not abuse its broad discretion in allowing such questioning. *See, e.g., Rodriguez*, 936 S.W.2d at 106 (holding that the trial court erred in excluding evidence that several witnesses had consumed wine before being involved in an automobile collision); *State v. Phillips*, 939 S.W.2d 502, 504–05 (Mo.App.1997) (holding that the trial court did not err in permitting the State to cross-examine the defendant about whether he was using methamphetamine when he committed the acts constituting the alleged offenses; whether defendant was under the influence of drugs was relevant in evaluating the accuracy and reasonableness of his perceptions); *State v. Selvy*, 921 S.W.2d 114, 116 (Mo.App.1996) (holding that the trial court did not err in permitting defendant to be cross-examined about whether he was high on cocaine when the crime occurred); *Myers*, 538 S.W.2d at 897–98 (holding that the trial court did not err in permitting cross-examination of the defendant to show that he had drunk several beers and was under the influence of alcohol at the time he observed the crime take place).

Defendant also contends the evidence concerning Defendant's use of methamphetamine the night before the robbery should have been excluded because it disclosed other crimes committed by him. We disagree. As an exception to the general rule against admissibility, "evidence of other crimes is admissible for certain purposes, such as to show motive.…" *State v. Edwards*, 116 S.W.3d 511, 533 (Mo. banc 2003). The State's cross-examination of Defendant established that he had used a gram of methamphetamine the night before the robbery. He also had a pretty heavy habit of drug use, and he was virtually out of money on the morning of September 30th. Castlebury testified that the reason Defendant wanted to go to the Casey's store was to get money. Although Defendant denied he needed the money to buy more drugs, his testimony simply presented a fact issue for the jury to decide. Therefore, the State's cross-examination of Defendant about his use of methamphetamine before the robbery, coupled with the other evidence in the case, was admissible to show a possible motive to commit the robbery.

Defendant has failed to present facially substantial grounds for believing that the State's cross-examination of him concerning his use of methamphetamine before the robbery resulted in a manifest injustice or miscarriage of justice. Accordingly, we decline to review his point on appeal for

---

3. In that regard, it is important to note that the jury was informed of Defendant's prior felony conviction for possession of a controlled substance by him during his own direct examination.

plain error. *See State v. Dillard,* 158 S.W.3d 291, 302 (Mo.App.2005); *State v. Franklin,* 144 S.W.3d 355, 359 (Mo.App. 2004). The judgment of the trial court is affirmed.

SHRUM, P.J. and BARNEY, J., concur.